Argued October 28, affirmed December 12, 1969, petition for
rehearing denied January 13, 1970

# STATE OF OREGON, *Respondent, v.*
# GEORGIA G. GOWDY and
# LAWRENCE GOWDY,
*Appellants.*

462 P. 2d 461

*John T. Lewis,* The Dalles, argued the cause for appellants. With him on the briefs were Lewis & Remington, The Dalles.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solcitor General, Salem, and Donald H. Turner, District Attorney, The Dalles.

Sidney I. Lezak, United States Attorney, District of Oregon, Portland; Shiro Kashiwa, Assistant Attorney General, Roger P. Marquis and Edmund B. Clark, Attorneys, Department of Justice, Washington, D. C., filed a brief for the United States of America as amicus curiae.

LANGTRY, J.

Defendants Lawrence and Georgia G. Gowdy, husband and wife, are enrolled and affiliated members of the Yakima Indian Nation. On April 3, 1966, they were fishing with fixed gill nets in the Columbia River at a usual and accustomed fishing place of the Yakima

Tribe. They were arrested by Oregon state authorities and charged with violation of ORS 509.206, which prohibited the use of fixed fishing gear at that time and place.

ORS 506.045 provides:

"There are excluded from the operation of * * * ORS 509.206 * * * any * * * Yakima * * * Indians * * * entitled to enjoy fishing rights * * * in so far as it would conflict with any rights or privileges granted to such Indians under the terms of the treaties made by the United States * * * with the * * * Yakima Indians on June 9, 1855."

Defendants were tried together in district court and convicted by a jury. After sentencing they appealed to the circuit court where a trial was had without a jury. They were again found guilty, a new sentence was imposed, and from that sentence they have appealed.

Defendants contend that they come within the exclusion of ORS 506.045 because they are Yakima Indians fishing under the authority of the treaty of June 9, 1855, between the Yakima Indian Nation and the United States Government. The treaty provides:

"The exclusive right of taking fish in all the streams, where running through or bordering said reservation, is further secured to said confederated tribes and bands of Indians, as also the right of taking fish at all usual and accustomed places, in common with the citizens of the Territory * * * ."

In *Maison v. Confederated Tribes of Umatilla Indian Res.*, 314 F2d 169 (9th Cir), cert den 375 US 829 (1963), it was held that the Indians' right to fish under the same provision in the Umatilla treaty is

"qualified by the state's right to regulate such fishing when necessary for conservation." *Maison* requires that the state prove two facts before imposing its regulations upon Indians fishing under treaty rights: (1) that there is a need to limit the taking of fish, and (2) that the particular regulation sought to be imposed is indispensable to the accomplishment of the needed limitation.

The defendants contend that inasmuch as the state made no attempt to prove these two prerequisites the conviction must be reversed. The state counters by saying that under *Whitefoot v. United States,* 293 F2d 658 (Ct Cl 1961), cert den 369 US 818 (1962), the rights of the Indians under the treaty are communal in nature, belonging to the tribe, "for adjustment by the tribe." Hence, an Indian fishing at accustomed places off the reservation must do so in compliance with the regulations of the tribe as to such fishing or he is not entitled to the benefit of the treaty rights. In other words, if an Indian is fishing off reservation in violation of both tribal regulations and state game laws, he is in exactly the same position as any non-Indian citizen of the United States violating the same law. Under the state's theory, if the defendants were violating Yakima tribal regulations they have no status to claim the exclusion for Indians in ORS 506.045, and the preliminary proofs required by *Maison,* supra, do not apply.

■ Several documents were received in evidence and accompany the record. Certain of these were certified under the official seal of the Yakima Indian Agency through the Department of the Interior. Under ORS 41.410(8) and ORS 43.350, all writings thus certified and offered were proper evidence. These state that the Yakima Indian Nation has no consti-

tution or bylaws. One document is a resolution, designated as T-38-56, dated December 6, 1955, adopted by the General Council, which consists of all of the adult, enrolled members of the tribe. Part of its purpose was to:

> "Establish and enforce such rules and procedures as may be necessary to safeguard individually and tribally owned property and resources for the use of present and future generations * * *,"

and

> "To safeguard, protect and secure rights, privileges and benefits guaranteed to the members of the Yakima Indian Nation by the Treaty of June 9, 1855 for all time."

It provides for the organization of the General Council and for annual and other meetings and election of officers of the General Council. The offices designated are Chairman, Vice-Chairman, Secretary-Treasurer, Sergeant-at-Arms, four vote counters and two alternates. What organizational procedures the General Council previously had does not appear. Nothing in Resolution T-38-56 or any of the other writings received in evidence indicates that the General Council officers, or any part of them, are, or can act as, an Executive Committee of the General Council. Provision is made for a Tribal Council of 14 members, and, "The powers of the Yakima Tribal Council shall be pursuant to the powers and authority set forth in General Council resolution dated February 18, 1944 * * *." The Resolution of February 18, 1944, which is part of the same exhibit and included under the same certification of the Yakima Indian Agency, as is Resolution T-38-56, provides that:

> "HEREAFTER the Tribal Council or body of fourteen chiefs is hereby empowered to transact

all business of the tribe, provided that any measures of great importance may be referred back to the people."

Pursuant to this authority the Tribal Council adopted Resolutions T-90 and T-91, which were received in evidence under the Indian agency certification. They set up regulations for Indians fishing off the reservation at accustomed places, including those on the Columbia River involved in the present controversy. For the year 1966, the opening of the fishing season was to be April 18.

Evidence produced by defendants included Exhibit F, which is a photocopy of a document entitled "Executive Order of the General Council of the Yakima Indian Nation" dated March 7, 1966. This purported, over the signatures of the Chairman, Vice-Chairman, Secretary and Sergeant-at-Arms of the General Council, to create the "Columbia River General Council Fish Commission of the Yakima Indian Nation," consisting of five named persons of whom defendant Lawrence Gowdy was one. The Commission was invested with "authority to establish and enforce such rules and procedures as may be necessary to safeguard individually and tribally owned property, property rights, and the resources on the Columbia River * * *." It is noted that only four of the ten officers of the General Council signed the original of this document.

Pursuant to this purported authority, the "Columbia River General Council Fish Commission" on March 16, 1966, adopted a regulation (Exhibit E) for Indian fisheries on the Columbia River, opening the season for gill net fishing on April 3, 1966. Exhibits F and E are copies and not certified by anyone. Nothing in evidence except Lawrence Gowdy's and K. Ten-

newash's confused testimony substantiates Exhibits E and F or suggests that an Executive Committee of the General Council even existed. The evidence was clear that the General Council was not in session at any time on or near March 7, 1966. Furthermore, Mr. Gowdy admitted that the Chairman of the General Council had repudiated the "Executive Order."

■ A written opinion of John L. Bishop, Regional Solicitor for the Bureau of Indian Affairs in the United States Department of the Interior, was properly received. It states that the regulations T-90 and T-91, made by the Tribal Council, are the effective applicable regulations. He said further that the officers of the General Council had no authority to set aside, supersede, or modify these ordinances of the Tribal Council, and that the regulations of the purported Columbia River General Council Fish Commission were made without authority and are a nullity.

■ 15 Stat 228 (1868), 25 USC § 2 (1964), charges the Department of the Interior with the management of all Indian affairs and all matters arising out of Indian relations. In *United States v. Holliday,* 70 US (3 Wall) 407, 18 L Ed 182 (1865), the United States Supreme Court said:

> "* * * [I]t is the rule of this court to follow the action of the executive and other political departments of the government, whose more special duty it is to determine such affairs. If by them those Indians are recognized as a tribe, this court must do the same * * *." 70 US at 419.

Thus, if the Yakima Tribal Council, and not the "Fish Commission," is recognized by the Bureau of Indian Affairs as having the authority to enact fishing regulations, this court must also recognize that authority.

Defendants contend the state court may not determine an internal dispute of the Indian tribe, citing *State v. Bertrand,* 61 Wash2d 333, 378 P2d 427 (1963). We agree, but in *Bertrand* the court accepted the determination of the executive branch of government that the "business committee" of the Quinaielt Tribe had authority to act as "governing body" for the tribe. In the case at bar, we accept the determination of the executive branch of the government that the Tribal Council, not the "Fish Commission," had authority to adopt the applicable regulations.

■ We conclude that the defendants, by fishing with gill nets on April 3, 1966, were acting outside of the treaty rights to which they would have been entitled had they been in compliance with regulations made by the Tribal Council concerning fishing on the Columbia River. Inasmuch as they were in violation of the tribal regulations there was no need for the state to produce the evidence of conservation necessity required by *Maison,* supra. The state's proof was sufficient for conviction of any United States citizen similarly situated. The judgments and sentences from which the appeals were taken are affirmed.

Affirmed.