Argued and submitted January 27, reversed September 10, 1986

# STATE OF OREGON,
*Respondent,*

*v.*

# BRUCE JIM,
*Appellant.*

## (2383; CA A33806)

725 P2d 372

Jack L. Schwartz, Portland, argued the cause and filed the brief for appellant.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., specially concurring.

## BUTTLER, P. J.

Defendant was convicted of unlawful sale of wildlife. ORS 498.022. On appeal, he raises numerous assignments of error. Because we agree with defendant that the state has not established that it has jurisdiction over this offense, we do not address the other assignments.

Defendant is an enrolled member of the Warm Springs Confederated Tribes. He was convicted of selling a deer, which, pursuant to a tribal permit, had been lawfully killed on the Warm Springs Indian Reservation. The sale occurred off the reservation on land ceded by the Confederated Tribes to the United States under an 1855 treaty that expressly reserved to the Indians fishing and hunting rights.[1] State law prohibits the sale of any wildlife; so far as the record shows, tribal law does not. Defendant argues that, because he is a member of a tribe that has reserved hunting rights (including the right to sell game) on off-reservation ceded lands, the state has no authority to enforce its wildlife laws against him.[2]

As a general rule, states have jurisdiction to enforce non-discriminatory laws against Indians off the reservation. *Mescalero Apache Tribe v. Jones,* 411 US 145, 148-49, 93 S Ct

---

[1] The treaty under which the Indians ceded to the United States their right and title to a substantial portion of the Oregon territory in exchange for the present reservation lands and some nominal consideration contained the following language:

"*Provided, also,* That the exclusive right of taking fish in the streams running through and bordering said reservation is hereby secured to said Indians; and at all other usual and accustomed stations, in common with citizens of the United States * * *; also the privilege of hunting * * * on unclaimed lands, in common with citizens, is secured to them." *Treaty with the Indians of Middle Oregon,* Art I, 12 Stat 963 (signed June 25, 1855; ratified by the Senate March 8, 1859; proclaimed by the President April 18, 1859).

It has long been recognized that

"the treaty was not a grant of rights *to* the Indians, but a grant of rights *from* them—a reservation of those not granted. * * * [The treaties] reserved rights * * * to every individual Indian, as though named therein." *United States v. Winans,* 198 US 371, 381, 25 S Ct 662, 49 L Ed 1089 (1905). (Emphasis supplied.)

[2] Defendant raises the same issue in two ways. First, he challenges the state's jurisdiction. Second, he raises a treaty defense. The analysis in both cases is the same. *See, e.g., Antoine v. Washington,* 420 US 194, 95 S Ct 944, 43 L Ed 2d 129 (1975) (treaty rights used as defense to criminal prosecution); *United States v. State of Washington,* 384 F Supp 312 (D Wash 1974), *aff'd* 520 F2d 676 (9th Cir 1975) (declaratory judgment action).

1267, 36 L Ed 2d 114 (1973). In addition, states, under their police power, generally have authority to protect and regulate the taking of wildlife within their boundaries.[3] *See, e.g., Baldwin v. Montana Fish and Game Comm'n,* 436 US 371, 391, 98 S Ct 1852, 56 L Ed 2d 354 (1978). However, when there is an applicable federal statute or treaty, the state's powers are limited by the Supremacy Clause of the United States Constitution. *Sohappy v. Smith, supra* n 3, 302 F Supp at 905. Accordingly, state regulation of Indian hunting and fishing must yield to Indian rights secured by a federal treaty.

The state argues that the right to hunt, reserved in the treaty, does not include the right to sell that which is taken pursuant to the right. As appealing as that proposition may be, the authorities are to the contrary. In *Puyallup Tribe v. Dept. of Game,* 391 US 392, 398, 88 S Ct 1725, 20 L Ed 2d 689 (1968) (*Puyallup I*), a treaty fishing case, the Supreme Court recognized that commercial uses of the fish resource are one aspect of the treaty fishing right, subject to state regulation only when necessary for conservation. In *Antoine v. Washington, supra* n 2, the Court recognized that the right to hunt also encompasses the right to use the game for commercial purposes. 420 US at 207. Therefore, the state's contention that sale of game is beyond the reach of the treaty rights and federal decisions is not correct.

The hunting rights in the treaty are not exclusive to the Indians. They are to be shared "in common with citizens." Federal caselaw has established that, when the rights are held "in common with" other citizens, states may regulate Indian hunting[4] on ceded land,[5] but only when the regulation is in the

---

[3] It is well established that states may regulate non-Indian hunters to achieve a variety of management objectives, even to the extent of prohibiting non-Indian hunting, so long as the regulation meets minimum constitutional standards. *See Antoine v. Washington, supra* n 2, 420 US at 206; *Sohappy v. Smith,* 302 F Supp 899, 908 (D Or 1969).

[4] The limitations on state regulation of reserved hunting rights and fishing rights are determined by the same analysis. *Antoine v. Washington, supra* n 2. Therefore, throughout this opinion, fishing cases and hunting cases will be used interchangeably.

[5] The treaty reserved to the tribe the right to fish and hunt off the reservation, on lands ceded to the United States, "in common with" other citizens of the territory. The specific treaty language provides that the right to fish off the reservation is at "usual and accustomed stations," while the right to hunt is on "unclaimed lands." The more general term "ceded territory" or "ceded areas" is often used to describe where the off-reservation right to hunt may be exercised, and we adopt that terminology. The protection accorded the right to fish and hunt in those off-reservation areas is the same.

interest of conservation, "provided the regulation meets appropriate standards and does not discriminate against the Indians." *Puyallup I, supra,* 391 US at 398.[6] In *Antoine v. Washington, supra* n 2, the Supreme Court explained:

> "The 'appropriate standards' requirement means that the State must demonstrate that its regulation is a reasonable and necessary conservation measure, *and* that its application to the Indians is necessary in the interest of conservation." 420 US at 207. (Citations omitted; emphasis in original.)

Therefore, there are three requirements that must be met before a state has the authority to impose its game regulations on treaty hunters in ceded territory. First, the state must show that the regulation is a reasonable and necessary[7] conservation measure. Conservation purposes are narrowly circumscribed, encompassing only those that are necessary for the perpetuation of a species, *Washington Game Dept. v. Puyallup Tribe,* 414 US 44, 48, 94 S Ct 330, 38 L Ed 2d 254 (1973) (*Puyallup II*), or "necessary to prevent the exercise of [the hunting] right in a manner that will imperil the continued existence of the * * * resource." *Sohappy v. Smith, supra* n 3, 302 F Supp at 908.

Second, the state must show that application of the specific regulation to treaty hunters and fishers is necessary in the interest of conservation. In *United States v. State of Washington, supra* n 2, Judge Boldt explained:

> "If alternative means and methods of reasonable and necessary conservation regulation are available, the state cannot lawfully restrict the exercise of off reservation treaty right fishing [or hunting], *even if* the *only alternatives* are restriction of fishing [or hunting] by non-treaty fishermen [or hunters], either commercially or otherwise, to the full extent necessary for conservation of [the resource]." 384 F Supp at 342. (Emphasis supplied.)

---

[6] Defendant argues that, because his right to hunt was reserved by treaty, the state has no power to regulate Indian fishing or hunting under any circumstances. The federal courts, led by the United States Supreme Court, disagree. Although at least one federal judge seriously questions the propriety of the federal caselaw allowing state jurisdiction in certain circumstances, *see United States v. State of Washington, supra* n 2, 384 F Supp at 334-39 (Boldt, J.), we are bound, as was the federal court, by the decisions of the higher courts.

[7] A regulation is "reasonable" when the specifically identified conservation measure is appropriate to its purpose and is "necessary" when the purpose is essential to conservation. *United States v. State of Washington, supra* n 2, 384 F Supp at 342.

Finally, the regulation must not discriminate against treaty hunters. That is to say, the state may not subordinate the treaty right to some other state objective or policy. *Sohappy v. Smith, supra* n 3, 302 F Supp at 908. In *Sohappy,* Oregon was found to be discriminating against treaty Indians in its fishery regulations because, although the regulations attempted to make an equitable distribution of the anadromous fish resource between sports fishers and commercial fishers, the state had not taken into consideration the rights of treaty fishers to share in the resource.

■　　When the state seeks to enforce a hunting regulation against treaty Indians in ceded areas, the burden is on the state to establish that its regulation is valid in the light of the foregoing requirements. As Judge Boldt said, "[N]o regulation applied to off reservation treaty [hunting] can be valid or enforceable unless and until it has been shown reasonable and necessary to conservation [as defined by federal law]." *United States v. State of Washington, supra* n 2, 384 F Supp at 342; *see also Maison v. Confederated Tribes of Umatilla Indian Res.,* 314 F2d 169 (9th Cir), *cert den* 375 US 829 (1963).

Although the state concedes that it must meet those conditions in order for it to have jurisdiction to regulate Indian treaty hunting rights, it argues that the conservation purpose of the statute prohibiting the sale of wildlife is self-evident and that, therefore, it should not be required to make a showing that its regulations can be validly applied to treaty hunters. We have no doubt that the state's laws regulating the taking and sale of wildlife have, as one of their goals, the prevention of "the serious depletion of any indigenous species," ORS 496.012(1), including deer. Their overall policy, however, is much broader:

> "It is the policy of the State of Oregon that wildlife shall be managed to provide the optimum recreational and aesthetic benefits for present and future generations of the citizens of this state." ORS 496.012(1).

■　　Although there is no question but that the state may regulate the taking and selling of wildlife by non-Indians to achieve a wide variety of management or conservation objectives, it does not have the same latitude in regulating the rights of treaty Indians to take and sell wildlife in ceded territory. *See Sohappy v. Smith, supra* n 3, 302 F Supp at 908.

That proposition was amplified by the Court of Appeals in *United States v. State of Washington,* 520 F2d 676, 686 (9th Cir 1975):

> "The state's program for management of the state's fisheries may appear sound and commendable, but the state shares its rights in those fisheries with another party. It may not force treaty Indians to yield their own protected interests in order to promote the welfare of the state's other citizens. The state must pursue its goals as best it can by regulating its own non-treaty Indian citizens. The state may secure treaty Indians' compliance with these regulations only by gaining their acquiescence in its goals. Direct regulation of treaty Indian fishing in the interests of conservation is permissible only after the state has proved unable to preserve a run by forbidding the catching of fish by other citizens under its ordinary police power jurisdiction. *Antoine v. Washington,* 420 U.S. 194, 95 S.Ct. 944, 952, 43 L.Ed.2d 129 (1975)."

■ It is apparent that the controlling federal law has gone a long way to protect the fishing and hunting treaty rights of Indians. We agree that prohibiting the sale of deer has a rational relation to conservation, because it eliminates an incentive to kill deer. However, as we understand the federal decisions, that is not enough to authorize the state to enforce its regulation against defendant. Here, the tribe permits the on-reservation taking of one deer per member family per month. The state must show, therefore, that prohibiting the sale off the reservation in ceded territory by tribal members of the lawfully taken deer is reasonable and necessary for the perpetuation of the deer population and that restriction of the sale of deer by non-treaty hunters is insufficient to accomplish conservation of the resource.

Here, there is no such evidence, because the trial court agreed with the state's contention that it need not present evidence to support its jurisdiction over defendant.[8]

The special concurrence would have us hold that the state may not enforce its prohibition of the sale of game against defendant, regardless of whether it established the requisite conservation purpose, because he killed the deer

---

[8] Although the state suggests that we remand for the taking of that evidence, because it was "not allowed" to present it, our review of the record indicates that the state argued that it need not do so, and the court agreed.

lawfully on the reservation. It cites no authority for that proposition, and we know of none. However, if that proposition is correct, then an Indian exercising his treaty right to kill deer off the reservation in ceded territory would also be free of any state laws prohibiting the sale of deer for which a conservation purpose is established, because he would have killed it lawfully pursuant to his treaty right.[9] That is not, and should not be, the law; to permit the sale of deer under those circumstances vastly expands the market and offers the incentive to kill more deer.

Part of the special concurrence's confusion arises out of its assertion that it is irrelevant that defendant sold the deer in ceded territory. Defendant's treaty right to hunt, including the right to sell game, off the reservation extends only to the "unclaimed lands," which are territories within which Indians formerly claimed the exclusive right to hunt and fish and in which they reserved those rights, under the treaty, in common with others when that territory was ceded to the United States by the treaty. If defendant had not sold the deer in such a place, he would not have been entitled to claim here that he was exercising his treaty right to sell the deer.

In short, the question in any hunting or fishing case in which the event for which a treaty Indian is prosecuted occurred off the reservation in ceded territory is whether the state has shown that the regulation that it wishes to enforce is necessary for conservation under the standards discussed above. If the state establishes the requisite conservation purposes, it may exercise its authority over treaty Indians exercising their treaty rights. The state loses here, not because

---

[9] The special concurrence apparently believes that there is an Indian breed of deer that lives on a reservation; therefore, the state has no interest in conserving Indian deer. The fact is that deer do not recognize man-made artificial barriers drawn on a map; they move on and off the reservation freely without making any distinction as to their legal status, (i.e., fair game or not). The state has an interest in conserving the deer population and may assert its jurisdiction over Indians exercising treaty rights in ceded territory if it makes the requisite showing of necessity to conserve the deer population. The fact that a deer was killed lawfully is irrelevant.

The specially concurring opinion in the companion case of *State v. Jim* (Warner), 81 Or App 177, 725 P2d 365 (1986), correctly states that, if tribal regulations do not forbid the defendant's conduct, the state may prosecute him if it shows a conservation necessity. 81 Or App at 188. That statement is inconsistent with the specially concurring opinion's rationale in this case.

it may never exercise its authority under these circumstances, but because it failed to establish the necessary conservation purpose of its regulation.

Reversed.

**ROSSMAN, J.,** specially concurring.

In wrenching so much verbiage out of this case, I believe that my colleagues have made it far more complex than it needs to be.

Defendant, a Warm Springs Indian, legally killed a deer on the Warm Springs Reservation, an area where the state does not claim any authority to regulate Indian hunting.[1] ORS 498.022, the statute which defendant is accused of violating, is intended to enforce the state's policy that deer are to be taken only for sport and personal consumption, not for sale. There is no evidence—nor does the state contend—that the Warm Springs tribes have a similar policy or that they also prohibit the sale of legally taken deer. We must therefore assume that they would permit defendant to dispose of the deer as he sees fit. For the state to forbid defendant to sell the deer would burden the tribally derived right. The state would indirectly impose on Warm Springs Indians a state policy which it has no right to impose on the tribes directly. It would thereby make state law superior to tribal law in an area where countless cases show the supremacy of tribal law. That the state may not do. We really need say nothing more.[2]

The source of the majority's error is its assumption

---

[1] The state may be able to regulate hunting on the reservation, if there is a conservation necessity for its action. *See Puyallup Tribe v. Washington Game Dept.,* 433 US 165, 97 S Ct 2616, 53 L Ed 2d 667 (1977). In the absence of such a necessity, the state may not serve its conservation interests, however valid, by regulating on-reservation Indian hunting. As the majority notes, deer are mobile. A result of that mobility is that the state may lose the ability to regulate their use. Once a deer bounds over a reservation boundary, the state must show not simply a conservation interest but a conservation *necessity* to override tribal rules permitting members to take and dispose of the deer. It did not attempt to do so here. Instead, it stipulated that defendant took the deer legally. The state has thus conceded that defendant's right to take the deer is controlled exclusively by tribal law. That concession—which was apparently unavoidable—gave away its case.

[2] Of course, if defendant had taken the deer under the authority of an Oregon hunting license, he would be subject to Oregon law concerning the disposition of the deer. He would not then be acting as a member of the tribe but rather as a citizen of Oregon.

—encouraged by the briefs—that whether the sale took place on ceded land is relevant to this case. It is not. The cases the majority cites on that point concern whether there is a tribal right to *fish* or *hunt* on ceded land. *Antoine v. Washington,* 420 US 194, 95 S Ct 944, 43 L Ed 2d 129 (1975); *Puyallup Tribe v. Department of Game,* 391 US 392, 88 S Ct 1725, 20 L Ed 2d 689 (1969). That question is obviously different from whether there is a right to *sell* fish or game legally taken under a tribal hunting or fishing right. Legally taken game is no more within the state's regulatory jurisdiction after it is taken than it was before. The tribes, not the state, have the authority to determine the proper uses of that game. Only if the tribes forbid the sale of legally taken game may the state impose its regulations on the off-reservation sale of deer taken on the reservation. *See State v. Gowdy,* 1 Or App 424, 462 P2d 461 (1969).

The state is correct when it says that the statute defendant allegedly violated has a conservation purpose. However, the only game which the statute is intended to conserve is that which the state has the right to regulate. In the absence of a conservation necessity,[3] the state has no right to regulate on-reservation (or treaty-protected off-reservation) Indian hunting. *See* n 1, *supra.* The state cannot impose its conservation requirements *after* the game is taken any more than it can before. The deer defendant took simply was not, at any relevant time, within the state's regulatory jurisdiction.[4] The state has no more interest in—or authority over—what a tribal member does with a legally taken deer than it does over the conditions under which the member may take it.

The real issue in this case, then—one which neither the majority nor either party properly considers—is the ability of the state to control the off-reservation disposition of fish and game taken legally under a tribal right. The few cases touching this question do not give a direct answer, but they suggest the answer that I have already indicated. In *Pioneer*

---

[3]A conservation purpose does not show a conservation necessity. If it did, the state, simply by enacting a statute with a conservation purpose, would override tribal rights. That is not the law.

[4]The record does not show whether the deer had at some time in its life lived off the reservation and thus subjected itself, however temporarily, to state control. Even if it had, it was an Indian deer when defendant took it, and it was the tribes' prerogative to control defendant's use of it.

*Packing v. Winslow,* 159 Wash 655, 294 P 557 (1930), the court held that Quinault Indians had an unqualified right to the fish they caught on the reservation and that a state law which prohibited shipping the fish out of state violated the Commerce Clause. In *People v. McCovey,* 36 Cal 3d 517, 205 Cal Rptr 643, 685 P2d 687 (1984), the California Supreme Court held that an extensive tribal and federal regulatory scheme preempted state regulation of the off-reservation sale of fish caught by Hoopa Indians on their reservation. Those cases are distinguishable from this case. Unlike the statute in *Pioneer Packing,* ORS 498.022 entirely prohibits defendant from selling game animals, not simply from selling them in interstate commerce.[5] In contrast to *McCovey,* there is no evidence here of a comprehensive federal and tribal scheme to control game on the Warm Springs Reservation which would support a finding of federal preemption of state regulation of off-reservation sale or other uses of that game. *See also New Mexico v. Mescalero Apache Tribe,* 462 US 324, 103 S Ct 2378, 76 L Ed 2d 611 (1983). Although these cases are not directly controlling, the result in each is to prohibit state interference with fish taken under a tribal right. That result is consistent with the strong support for tribal self-regulation and tribal control of tribal resources which is basic to Indian law. *See New Mexico v. Mescalero Apache Tribe, supra,* 462 US at 332.

For the state to prohibit the off-reservation sale of a reservation resource could destroy the tribes' ability to determine their own policies and to respond to their own needs in ways which they consider appropriate. The Warm Springs tribes have decided to allot the opportunity to take deer to their members at the rate of one deer per month per family. We must assume, in the absence of any evidence to the contrary, that the tribes would permit the sale of the deer. That being the case, defendant acted within the tribes' rights, rights with which the state may not interfere, in the sale at issue in this case. For that reason, he was entitled to a directed verdict of acquittal.[6]

---

[5]Defendant does not argue that applying ORS 498.022 to a sale of game legally taken on an Indian reservation violates Congress' exclusive power "[t]o regulate Commerce with * * * the Indian tribes." US Const., Art I, § 8.

[6]The majority's statement that this special concurrence is inconsistent with my special concurrence in *State v. Jim (Warner),* 81 Or App 177, 725 P2d 365 (1986), is puzzling. My point in both cases is the same: At least in the absence of a conservation

Fearful that I may have already violated my own admonition that this court need not say so much, I shall end this special concurrence at this point.

necessity, whether the state may apply its regulations to off-reservation hunting and fishing activities of tribal members depends on whether those members are exercising tribal rights in a fashion which the tribe does not prohibit. I do not see how the possibility that the state could have overridden tribal regulations permitting defendant to take and dispose of this deer, if there had been a conservation necessity—which there was not—has anything to do with the case.