Argued and submitted May 26, reversed and remanded for new trial August 25, 1993

# STATE OF OREGON,
*Respondent,*

*v.*

# VERN DALE BRONSON,
*Appellant.*

(CR 91-0089, CR 91-0090, CR 91-0117;
CA A73868 (Control), A73869, A73870)
(Cases Consolidated)

858 P2d 467

Mike Kilpatrick, Mt. Vernon, argued the cause for appellant. With him on the brief was Kilpatricks, Mt. Vernon.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virgina L. Linder, Solicitor General, Salem.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

RIGGS, J.

### RIGGS, J.

Defendant appeals his conviction for unlawful sale of wildlife. ORS 496.992. We reverse.

Defendant is an enrolled member of the Confederated Tribes of the Umatilla Indian Reservation. He was prosecuted for three incidents of unlawful sale of elk. Defendant entered not guilty pleas and requested a court-appointed attorney. The trial was continued twice over an 11-month period by defendant's appointed counsel. The day before the trial was scheduled to start, defendant asked the judge for a new lawyer. The next day, the court denied defendant's request as untimely, but dismissed defendant's attorney and proceeded with the trial. The court required defendant's attorney to remain in attendance to answer any of defendant's questions. The court stated:

> "The court is further reminded that justice delayed is justice denied. The court, exercising its discretion in this matter, is not going to further delay this process, will not continue the matter on the whim of a defendant that he doesn't believe counsel is looking after his interests, we are going to proceed."

During the trial, defendant stated that he did not feel his court-appointed attorney was representing him "the way that I deserve to be represented" and that he did not wish to represent himself:

> "I would just like to state that a, that I did request an attorney and I don't wish to represent myself and, I didn't get an attorney so I'm here by myself."

He took no meaningful part in the trial and was convicted.

Defendant contends that the trial court erred by denying his request for substitute counsel and by requiring him to defend himself. He also contends that the trial court had no jurisdiction over him because his case involved treaty rights as an Indian to hunt. Defendant has been charged in the Umatilla Tribal Court for the same incidents.

We address the question of jurisdiction first. In *State v. Jim*, 81 Or App 189, 193, 725 P2d 372 (1986), we cited three requirements that must be met before a state has the authority to impose its game regulations on Native Americans who

have treaty hunting rights. First, the state must show that the regulation is a reasonable and necessary conservation measure or necessary to prevent the exercise of a right in a manner that will imperil the continued existence of the resource. Second, the state must show that application of the specific regulation is necessary in the interest of conservation. Finally, the regulation must not discriminate against treaty hunters to take and sell wildlife.

■ In *United States v. Williams*, 898 F2d 727, 729 (9th Cir 1990), the Ninth Circuit held:

"[I]f an Indian tribe has enacted wildlife laws similar to the state or federal laws that are being enforced against tribe members, the tribal laws create a presumption of validity. The courts must make a finding of the validity of the use of state or federal wildlife laws against tribe members. However, there is no need for a hearing on the issue of conservation necessity if the tribe itself has enacted similar, valid laws. Trial courts need only establish the existence of such similar laws in order to establish the validity of the state or federal laws."

Although *Williams* involved a federal prosecution for selling wildlife in interstate commerce, the analysis and reasoning is applicable to this case. Chapter 1, section 3, of the Confederated Tribes of the Umatilla Indian Reservation Wildlife Code provides, in relevant part:

"C. All wildlife shall be preserved, protected, and perpetuated in a manner that is compatible with primary use of the lands and waters of the Umatilla Indian Reservation * * *."

Chapter 7, section 17, of the tribal wildlife code provides, in relevant part:

"A. No tribal member shall:

"(1) Sell or have in his possession with the intent to sell;

"(2) Expose or offer for sale;

"(3) Use as the basis for an exchange of money; or

"(4) Ship for commercial purposes any wildlife or parts thereof * * *."

ORS 496.012 provides, in relevant part:

"[T]he goals of wildlife management are:

"(1) To maintain all species of wildlife at optimum levels and prevent the serious depletion of any indigenous species."

ORS 498.022 provides, in relevant part:

"Except as the commission by rule may provide otherwise, no person shall purchase, sell or exchange, or offer to purchase, sell or exchange any wildlife, or any part thereof."

Both the state and tribal laws prohibit selling, exchanging or offering to sell or exchange wildlife. The purpose of the state and tribal law is to conserve wildlife. Because the laws are so similar in wording, we hold that the state law does not discriminate against treaty hunters who take and sell wildlife. Therefore, the trial court correctly found that the state law was validly applied to defendant, a treaty hunter.

 Defendant also assigns error to the failure to appoint counsel and requiring defendant to proceed without an attorney. The right to counsel is guaranteed by Article I, section 11, of the Oregon Constitution, and by the Sixth Amendment to the Oregon Constitution. *See also* ORS 135.045. It encompasses the right not to be forced to proceed with a particular attorney. *State v. Barnett*, 41 Or App 797, 802, 598 P2d 1301, *rev den* 287 Or 641 (1979). The right to substitute counsel is not absolute, and a request for removal of counsel is a matter within the trial court's discretion. *See* ORS 135.050(5); *State v. Pagan*, 80 Or App 65, 68, 721 P2d 859, *rev den* 301 Or 766 (1986). However, the exercise of that discretion requires accommodating both the right to effective counsel and the need for an orderly and efficient judicial process. *State v. Wilson*, 69 Or App 569, 572, 687 P2d 800, *rev den* 298 Or 553 (1984). A defendant must be permitted to state the reasons why he believes that appointed counsel should be discharged and new counsel appointed. *State v. Heaps*, 87 Or App 489, 493, 742 P2d 1188 (1987). The court must inquire into the nature and evaluate the merits of defendant's complaints. 87 Or App at 494. It has an affirmative duty to determine, on the record, if defendant's decision was an "intelligent and understanding one." *State v. Davis*, 110 Or App 358, 360, 822 P2d 736 (1991).

 The state argues that it is clear from the record that the judge inquired "off the record" into defendant's reasons

for requesting new counsel. However, the record does not indicate the specific concerns or conflicts defendant had with his court-appointed attorney or if the court evaluated the merits of defendant's complaint. In addition, nothing we have available in the record shows that the court determined that defendant understood the implications of proceeding without counsel.[1] The trial court's failure to make the proper inquiries on the record, under these facts, is reversible error.

Reversed and remanded for a new trial.

---

[1] The majority of the discussion on the record centered on the trial court defending the honor of the court-appointed attorney and complaining about the inconvenience to the jurors and witnesses if a new attorney was appointed.