**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LESLIE DAWN EAGLE,
        *Petitioner-Appellant,*

v.

YERINGTON PAIUTE TRIBE,
        *Respondent-Appellee.*

No. 08-16786

D.C. No.
3:06-cv-00563-
LRH-RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
February 9, 2010—San Francisco, California

Filed May 7, 2010

Before: Alex Kozinski, Chief Judge, David R. Thompson
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge Thompson

## COUNSEL

Michael K. Powell, Reno, Nevada, for the petitioner/appellant.

Mitchell C. Wright, Reno, Nevada, for the respondent/appellee.

## OPINION

THOMPSON, Senior Circuit Judge:

Leslie Dawn Eagle challenges her conviction of criminal child abuse in the tribal court for the Yerington Paiute Tribe. Dawn Eagle contends she was denied due process because the Tribe failed to allege and prove beyond a reasonable doubt that she was an "Indian," which, according to Dawn Eagle, is a necessary element of her crime of conviction. The district court concluded that Indian status, although a requirement for tribal jurisdiction, was not an element of the crime and denied Dawn Eagle's habeas corpus petition. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

*Background*

In August 2004, the Tribe filed a criminal complaint charging Dawn Eagle with child abuse under section 5-50-020 of the Tribe's Law and Order Code (the "Code"). In January 2005, the Tribe filed a second complaint against Dawn Eagle, which added several criminal counts and attached a probable cause statement alleging that Dawn Eagle was an Indian. For procedural reasons, the Tribe prosecuted Dawn Eagle under the original complaint only.

Section 5-50-020 defines child abuse as the "non-accidental physical or mental injury to a person under eighteen" in the defendant's care. The defendant's status as an Indian is not an element of this offense.

The Code recognizes that the tribal court only has criminal jurisdiction over Indians. Section 1-20-030 provides that the "Tribal Court shall have criminal jurisdiction over all offenses enumerated in this Law and Order Code . . . when committed within the jurisdiction of the court by any Indian . . . ." Section 1-21-030 of the Code specifies that the "burden of raising the issue of non-jurisdiction (status as a Non-Indian) shall be upon the person claiming the exemption from jurisdiction but the burden of proof of jurisdiction (status as an Indian) remains with the prosecution."

Dawn Eagle never raised the issue of her Indian status or the tribal court's jurisdiction before trial or at any point prior to the close of evidence. Instead, Dawn Eagle stated for the first time during closing argument that she should be found not guilty because the prosecution failed to prove that she was an Indian. The tribal court convicted Dawn Eagle without expressly concluding that she was an Indian.

Dawn Eagle appealed to the Inter-Tribal Court of Appeals, which affirmed. That court concluded that Dawn Eagle failed

to timely and adequately challenge the Tribe's jurisdiction, and that there was sufficient evidence at trial establishing that Dawn Eagle was in fact an Indian.

Dawn Eagle filed a petition for a writ of habeas corpus with the district court pursuant to 25 U.S.C. § 1303. The district court denied the petition, concluding that Indian status was not a necessary element of the crime of which Dawn Eagle had been convicted. The district court concluded that the Tribe did not have to prove beyond a reasonable doubt that Dawn Eagle was an Indian when she raised the issue for the first time in her closing argument. This appeal followed.

II

*Tribal Jurisdiction*

**[1]** In 1990, Congress amended the Indian Civil Rights Act of 1968 ("ICRA"), 25 U.S.C. §§ 1301-1303, in response to the Supreme Court's decision in *Duro v. Reina*, 495 U.S. 676 (1990), which held that tribes lack inherent authority to prosecute nonmember Indians. Pub. L. 101-511, Title VIII, § 8077(b)-(c), 104 Stat. 1856, 1892-93 (1990). Congress amended the definition of the tribes' "power of self-government" to "recognize[ ] and affirm[ ]" the "inherent power of Indian tribes . . . to exercise criminal jurisdiction over all Indians." 25 U.S.C. § 1301(2). Coined the "*Duro*-fix," the 1990 Amendments restored the tribes' inherent power to prosecute nonmember Indians for misdemeanors. *United States v. Lara*, 541 U.S. 193, 199 (2004); *id.* at 215-16 (Thomas, J., concurring).

**[2]** The 1990 Amendments defined "Indian" as "any person who would be subject to the jurisdiction of the United States as an Indian under section 1153, Title 18, if that person were to commit an offense listed in that section in Indian country to which that section applies." 25 U.S.C. § 1301(4). Section 1153 gives the federal courts exclusive jurisdiction

over "[a]ny Indian" who commits certain crimes within Indian country. *See Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 203 (1978). It does not define "Indian," but the Supreme Court has concluded that for the purpose of federal jurisdiction, "Indian" does not include "many individuals who are racially to be classified as 'Indians.' " *United States v. Antelope*, 430 U.S. 641, 646 n.7 (1977) (quoting *Morton v. Mancari*, 417 U.S. 535, 553 n.24 (1974)) (Indian status is "political rather than racial in nature"). For federal prosecutions under § 1153, a "defendant's Indian status is an essential element . . . which the government must allege in the indictment and prove beyond a reasonable doubt." *United States v. Bruce*, 394 F.3d 1215, 1229 (9th Cir. 2005); *cf. United States v. Cruz*, 554 F.3d 840, 850-51 (9th Cir. 2009) (distinguishing § 1153 from § 1152, for which Indian status in an affirmative defense).

Dawn Eagle contends that because the 1990 Amendments to ICRA defined "Indian" by reference to § 1153, all tribal prosecutions are subject not only to the federal definition of "Indian," but also to § 1153's Indian-status pleading requirement. We disagree. There is no evidence that Congress intended to incorporate any aspect of § 1153 other than the definition of "Indian."

## III

### *Statutory Text*

We start, as always, with the statutory text. The 1990 Amendments do not expressly impose § 1153's federal pleading requirements on tribal prosecutions or otherwise make Indian status an essential element of every tribal offense. In arguing otherwise, Dawn Eagle over-reads the statute.

**[3]** True, the statute defines "Indian" by referencing § 1153. *See* 25 U.S.C. § 1301(4). But that reference simply "make[s] it plain that the definition of 'Indian' is the same as

'Indian' in [§ 1153]," nothing more. *Means v. Navajo Nation*, 432 F.3d 924, 930 (9th Cir. 2005);[1] *see United States v. Maggi*, 598 U.S. 1073, 1077-80 (9th Cir. 2010) (discussing the development of case law interpreting "Indian" as applied to § 1153). It does not subject the tribes' inherent prosecutorial authority to the federal pleading and proof requirements of § 1153. "Rather, it enlarges the *tribes'* own 'powers of self-government' " to prosecute all Indians for misdemeanors. *Lara*, 541 U.S. at 198 (quoting 25 U.S.C. § 1301(2)).

**[4]** In the present case, the Tribe exercised its inherent power of self-government to define its child abuse offense without an Indian status element and to create a procedural rule requiring defendants to raise the jurisdictional issue of Indian status before the Tribe must prove it at trial. While the Tribe only has jurisdiction over Indians, the Tribe has not made status as an Indian an essential element of the crime, and Congress has not required it to do so. Thus, the Tribe was not required to plead and prove Dawn Eagle's Indian status beyond a reasonable doubt when Dawn Eagle did not raise the issue.

IV

*Legislative Intent*

**[5]** Were this not clear from the text and purpose of the 1990 Amendments, the legislative history would leave no doubt.

Congress understood that the "definition of 'Indian' for purposes of 18 U.S.C. [§ ]1153 was used in the 1990 amendments to the Indian Civil Rights Act so that there would be a *consistent definition of 'Indian'* in the exercise of jurisdic-

---

[1]Thus, in *Means*, we concluded that "all Indians" under ICRA meant "all of Indian ancestry who are also Indians by political affiliation, not all who are racially Indians." 432 F.3d at 930.

tion by either the Federal government or a tribal government." S. REP. NO. 102-168, at 6 (1991) (emphasis added). Congress recognized that "[i]n most cases, status as an Indian for purposes of 18 U.S.C. [§ ] 1153 is an element of proof" but chose not to incorporate this requirement. *Id.* at 5; *see also* H.R. REP. NO. 102-61, at 4 (1991) (Section 1153 "is relevant in that Federal criminal prosecutions under Section 1153 . . . have resulted in a body of case law with regard to *who is an Indian* for purposes of Section 1153. [The 1990 Amendments] incorporate[ ] *this case law* through its definition of 'Indian', and thereby provide[ ] some consistency between federal and tribal criminal prosecutions *with regard to the class of persons subject to such prosecutions*.") (all emphases added).

**[6]** We therefore conclude that to the extent ICRA, as amended, references § 1153 to define "Indian," it does so to incorporate the federal definition of "Indian." ICRA does not make Indian status an essential element of every tribal misdemeanor offense.

V

*Timely Dispute of Indian Status*

Dawn Eagle does not claim that she did not have notice of the Tribe's position that she was an Indian or that she timely disputed her Indian status such that the prosecution was required to prove that she was an Indian. In any event, we are satisfied that no due process violation occurred in this case.

With regard to notice, the probable cause statement attached to the Tribe's second complaint alleged that Dawn Eagle was an Indian. Although the Tribe proceeded against Dawn Eagle only on the first complaint, the second complaint nevertheless put Dawn Eagle on notice of the Tribe's position that she was an Indian.

**[7]** Dawn Eagle therefore could have timely disputed the issue of Indian status, but she did not. Instead, she waited

until her closing argument to assert that the prosecution had failed to prove that she was an Indian. Dawn Eagle did not contend that the tribal court lacked jurisdiction over her because she was not an Indian; she only asserted that the prosecution had failed to prove she was an Indian. Even assuming this was sufficient to raise the jurisdictional issue, it was untimely. Because section 1-21-030 requires the tribal prosecution to prove Indian status beyond a reasonable doubt, it implicitly contemplates that a defendant's challenge will come at a point in the case when the prosecution can introduce the required proof. Here, Dawn Eagle waited until after the close of evidence at trial—a point when the time to prove her Indian status had passed—before she raised the issue. Dawn Eagle waited too long.

## VI

### *Conclusion*

[8] We affirm the district court's denial of Dawn Eagle's petition for a writ of habeas corpus. Indian status is not an essential element of the tribal misdemeanor offense of which Dawn Eagle was convicted, and the Tribe was not required to prove it beyond a reasonable doubt when she did not timely raise the issue.

**AFFIRMED**.