Submitted September 27, 2013, vacated and remanded April 20, petition for review denied November 3, 2016 (360 Or 568)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTIAN JOHN FLETCHER HILL,
*Defendant-Appellant.*

Umatilla County Circuit Court
CR100274; A147778

373 P3d 162

Peter Gartlan, Chief Defender, and Erin Snyder, Deputy Public Defender, Office of Public Defense Services filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Paul L. Smith, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Nakamoto, Judge pro tempore.

NAKAMOTO, J. pro tempore.

## NAKAMOTO, J. pro tempore

Defendant was convicted of second-degree disorderly conduct, ORS 166.025, and fourth-degree assault, ORS 163.160, as a result of an incident at a casino owned and operated by the Confederated Tribes of the Umatilla Indian Reservation. In the trial court, defendant moved for dismissal of the case, arguing that the trial court lacked subject matter jurisdiction. On appeal, he again asserts that the court lacked subject matter jurisdiction, but he offers a new rationale for his position: because the incident occurred in Indian country,[1] (1) the state bore the burden, but failed, to present evidence regarding his non-Indian status, which was necessary for the court to determine its subject matter jurisdiction, and (2) even though he did not alert the court that his non-Indian status was required for the court's jurisdiction, the court was required to dismiss the case. The state responds that, properly understood, defendant's challenge is to personal jurisdiction over him and not the court's subject matter jurisdiction over the crimes charged and that, therefore, his current jurisdictional argument cannot be considered because it is unpreserved.

Contrary to the state's position, we conclude that defendant raises a challenge to the court's subject matter jurisdiction as circumscribed under federal law and that defendant correctly asserts that his non-Indian status was the determining factor in whether the trial court had jurisdiction over the charged crimes. However, although the record is silent regarding defendant's non-Indian status, we reject defendant's contention that the proper disposition is an outright reversal. Rather, we decide, as a matter of first impression in Oregon, that the better course is to vacate the judgment and remand to permit defendant an opportunity

---

[1] Congress defines Indian country in 18 USC section 1151 as including:

"(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

to provide the trial court with evidence sufficient to permit a conclusion that he is Indian. If defendant meets his burden of production, the trial court must then determine, with the state bearing the burden of persuasion, the jurisdictional fact of defendant's non-Indian status. If defendant does not meet his burden of production, or if the trial court determines defendant's status as non-Indian, then the trial court shall reinstate the judgment.

## I. FACTS

Because defendant was convicted after a jury trial, we set out the facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008). Defendant attended a poker tournament at the Confederated Tribes' Wildhorse Resort and Casino, located on the Umatilla Indian Reservation. During a meal break, casino staff consolidated several of the poker tables and moved defendant's chips to a place at a different table. Maddern, the assistant poker director, told defendant where his chips had been moved. Defendant became angry and said that he would shoot Maddern if his chips were moved again.

After defendant sat down and started to play, Maddern heard defendant cursing and told defendant that, if he continued to be disruptive, he would incur a penalty. Defendant cursed again, Maddern issued the penalty, and defendant became more verbally abusive. Maddern walked away to call security, but defendant pursued him, continuing to cause a disturbance. Several security personnel arrived, and Maddern asked them to escort defendant off the premises, telling defendant that he was disqualified from the tournament. As Maddern walked away, several security guards, including Norris, attempted to get defendant to go into the hallway with them. Defendant refused, and, after Norris grabbed his arm, defendant broke away and pursued Maddern. Norris caught up with defendant and grabbed the back of defendant's shirt. Defendant grappled with Norris, and they fell to the ground, with defendant holding Norris by the neck. Other employees eventually pulled defendant off Norris, who suffered injuries to his neck. Defendant was arrested by tribal police.

The state charged defendant with multiple misdemeanor counts: fourth-degree assault, ORS 163.160, for injury to Norris; three counts of attempted fourth-degree assault of the other men, ORS 163.160 and ORS 161.405; menacing, ORS 163.190, for conduct directed against one of the other men; and second-degree disorderly conduct, ORS 166.025. The trial court dismissed the attempted fourth-degree assaults on the state's motion.

At the close of the state's case-in-chief, defendant asserted that the trial court lacked subject matter jurisdiction and sought dismissal of the case. Specifically, defense counsel argued that, because the offenses had occurred on a tribal reservation, the court lacked jurisdiction:

"[T]he defense position [is] that in fact this Court does not have jurisdiction, it's not the appropriate venue for this matter.

"This incident, as has been testified to, occurred at the Wildhorse Casino, [which] is wholly on Umatilla tribal grounds.

"And pursuant to the federal register, a notice was published in that register, which is binding on the relations between the State, the Federal Government, and the tribal reservations, that all criminal jurisdictions over—exercised by the State of Oregon, over the Confederated Tribes of Umatilla County would be returned to the United States as of January 2nd, 1981, pursuant to 25 USC 1323.

"That order, to my knowledge, has never been overturned. That would indicate that this Court in fact does not have jurisdiction over this matter as it did occur wholly on tribal—on a tribal reservation."

The trial court rejected defendant's motion on a different ground: that the record included evidence that the victim was not an enrolled tribal member. The trial court observed that there was evidence, "at one point, that the victim was not enrolled" as a tribal member. Although defendant then argued that, for purposes of subject matter jurisdiction, it did not matter whether the victim was or was not a tribal member, the court adhered to its ruling.

The state did not adduce evidence at trial regarding defendant's status as an Indian or non-Indian. Nor did defendant argue, as he does on appeal, that the absence of such evidence was significant to his jurisdictional motion.

The jury acquitted defendant of menacing, but convicted him of fourth-degree assault and second-degree disorderly conduct. On appeal, defendant's sole assignment of error is that the trial court erred in denying his motion to dismiss for lack of subject matter jurisdiction.

## II. ANALYSIS

A. *The Parties' Contentions on Appeal*

Defendant offers a number of reasons why the trial court erred in denying his motion to dismiss for lack of subject matter jurisdiction. Among other things, defendant asserts that, in general, "states have jurisdiction over criminal offenses committed by non-Indians against non-Indians on a reservation." Defendant also argues that the Amended and Restated Tribal-State Compact for Regulation of Class III Gaming Between the Confederated Tribes of the Umatilla Indian Reservation and the State of Oregon (the compact) provides for subject matter jurisdiction in Oregon courts only when an offense on the reservation is committed by a non-Indian. In defendant's view, the compact

"granted the state jurisdiction over offenses committed by *non-Indians* within the Wildhorse Resort and Casino and on the Umatilla Indian Reservation, regardless of the status of the victim. [Compact] at § 5.A.2. The tribe, however, retained criminal jurisdiction in itself and in the federal government for those offenses 'committed by Indians within the Gaming Facility.' [Compact] at § 5.A.1."

(Emphasis in original.) Defendant further contends that he sufficiently preserved his challenge but that, even if he did not, he may contest subject matter jurisdiction at any time. Finally, defendant explains, the record is insufficient to support the court's subject matter jurisdiction.

The state initially responds that defendant failed to preserve his contention for appeal. In part, the state asserts that defendant makes a late personal-jurisdiction argument

that is different from the argument he made at trial and unsupported by the case law he cites. The state argues that "a claim that a court does not have jurisdiction over a particular offender, because of personal or historic facts associated with that individual, is a matter of personal jurisdiction, not subject matter jurisdiction." The state relies solely on this sentence from *State v. Terry*, 333 Or 163, 186 n 14, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002): "Subject matter jurisdiction differs from personal jurisdiction, which governs the assertion over the person of the accused." The state concludes with its observation that a challenge to personal jurisdiction may be waived.

While asserting that defendant challenges only personal jurisdiction, the state does not directly refute defendant's contentions concerning (1) the limits of the state's subject matter jurisdiction over criminal offenses committed at the casino and on the Umatilla Indian Reservation and (2) the nature of the jurisdiction addressed in section 5 of the compact. Indeed, although the state makes assertions about some laws governing when *a federal court* has subject matter jurisdiction over offenses committed at the casino, the state never directly contradicts defendant's position that *a state court's* subject matter jurisdiction is limited to offenses at the casino or on the Umatilla Indian Reservation that were committed by non-Indians. Nor does the state contradict defendant's assertion that the compact addresses the state's subject matter jurisdiction over offenses committed at the casino.

B. *Subject Matter Jurisdiction vs. Personal Jurisdiction*

In light of the state's preservation argument, which rests on the foundation that defendant actually makes a belated and unpreserved personal-jurisdiction challenge, we first address the question whether defendant raises an issue of subject matter jurisdiction. We conclude that the issue before us is the trial court's subject matter jurisdiction.

We first address the state's reliance on *Terry*, which is not persuasive. In *Terry*, the defendant contended that a defect in the indictment deprived the trial court of subject matter jurisdiction. The Supreme Court explained in

general terms the nature of subject matter jurisdiction, an explanation supporting defendant's position in this case that he is challenging the trial court's subject matter jurisdiction over certain offenses arising in Indian country. The court in *Terry* stated that "[s]ubject matter jurisdiction defines the scope of *proceedings that may be heard* by a particular court of law and is conferred by statute or the constitution." 333 Or at 186 (emphasis added). And, the court added, "[u]nder the Oregon Constitution, circuit courts have subject matter jurisdiction over all actions unless a statute or rule of law divests them of jurisdiction." *Id.* The court's statement distinguishing subject matter jurisdiction from personal jurisdiction in *Terry,* a case that involved neither crimes committed in Indian country nor an issue of personal jurisdiction, provides no support for the state's position that defendant's argument is actually one involving personal jurisdiction "because of personal or historic facts associated" with defendant.

Indeed, the very premise of the state's argument—that, if the jurisdictional dispute turns on personal or historic facts associated with the individual, then the matter involves personal and not subject matter jurisdiction—is easily shown to be invalid by counterexample. Perhaps the most familiar counterexample is a case of disputed federal subject matter jurisdiction based on diversity of citizenship of the parties.

As provided in 28 USC section 1332(a)(1), federal district courts have subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between * * * citizens of different States[.]" For purposes of determining diversity jurisdiction, a district court must determine where the parties are "domiciled." *Lew v. Moss,* 797 F2d 747, 749 (9th Cir 1986). Where an individual is "domiciled" turns on a number of factors, including "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and

payment of taxes," *id.* at 750, all personal or historic facts associated with the individual. However, that such facts are disputed or determinative of the jurisdictional question does not render it one of personal jurisdiction over the individual; rather, the issue remains one of subject matter jurisdiction. *See id.* at 751-52 (examining various factors and concluding that the defendant did not produce substantial evidence to show that his domicile had changed and that the district court erred in dismissing the case for lack of subject matter jurisdiction); *accord Gutierrez v. Fox*, 141 F3d 425, 428-29 (2d Cir 1998) (examining the factual record concerning the plaintiff for purposes of his domicile and subject matter jurisdiction).

Another example establishing that subject matter jurisdiction over a class of offenses can be defined by reference to the kind of person who commits the offense is the criminal provision of Public Law 83-280 (commonly referred to as Public Law 280), codified at 18 USC section 1162(a), which provides:

"Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory."

As the Oregon Supreme Court has observed, "determining appropriate jurisdiction for criminal acts committed on an Indian reservation is dependent on a number of factors including whether the crime was committed on the reservation, whether the offender was Indian or non-Indian, the nature of the criminal act, and the applicability of Public Law 280." *State v. Kurtz*, 350 Or 65, 78-79 n 9, 249 P3d 1271 (2011).

In this case, defendant contends that federal law, as well as the compact between the state and the Confederated Tribes, divested Oregon courts of jurisdiction over offenses committed by Indians on the Umatilla Indian Reservation,

yet the state never established defendant's status as a non-Indian. In accordance with the description of subject matter jurisdiction in *Terry*, defendant challenges the trial court's ability to hear the kind of proceeding that was brought, an Indian-country case in which the status of defendant as a non-Indian was not established. And, defendant is correct that such a challenge is to the court's subject matter jurisdiction.

Under federal law, Oregon courts are divested of subject matter jurisdiction over certain criminal offenses that occur in Indian country, including offenses committed by Indians. "Tribal courts have criminal jurisdiction over all offenses committed by Indians in each tribe's respective Indian country lands. 25 USC § 1301(2)." *Kurtz*, 350 Or at 72 n 5. Congress also has granted, as provided in the Indian General Crimes Act, 18 USC section 1152,[2] and the Indian Major Crimes Act, 18 USC section 1153,[3] limited jurisdictional authority to federal courts over crimes committed by Indians in Indian country. Tribal courts do not have inherent

---

[2] 18 USC section 1152 states:

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, * * * shall extend to the Indian country.

"This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."

[3] 18 USC section 1153 provides:

"(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

"(b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense."

criminal jurisdiction to try and to punish non-Indians who commit crimes in Indian country; thus, tribal courts may not assume such jurisdiction unless authorized by Congress. *Oliphant v. Suquamish Indian Tribe*, 435 US 191, 212, 98 S Ct 1011, 55 L Ed 2d 209 (1978).

Instead, each state "has exclusive jurisdiction over criminal offenses occurring within Indian country that are committed by non-Indians against non-Indians." *Kurtz*, 350 Or at 72 n 5 (citing *Solem v. Bartlett*, 465 US 463, 465 n 2, 104 S Ct 1161, 79 L Ed 2d 443 (1984)). State courts do not have criminal jurisdiction over crimes committed by Indians in Indian country unless jurisdiction has been granted by Congress. *State v. Jim*, 178 Or App 553, 556, 37 P3d 241, *rev dismissed*, 335 Or 91. That jurisdictional principle has been recognized in Oregon cases for over a century. In *State v. Columbia George*, 39 Or 127, 147, 65 P 604 (1901), the Supreme Court noted that "state courts have never had jurisdiction over the Indians within the Indian country or upon Indian reservations, except as and in so far as the general [federal] government has relinquished the supervisory control and authority over them." The court's conclusion signals its determination of subject matter jurisdiction: "[I]t follows that the state court is without *jurisdiction of the offense charged*," not over the defendant charged. *Id.* (emphasis added); *accord* Charles F. Wilkinson, *American Indians, Time, and the Law* 88 (1987) (summarizing that "matters among non-Indians go to the states and matters among Indians go to the tribes" and explaining that "[t]hose baselines are now set, absent explicit federal provision to the contrary"); William C. Canby, Jr., *American Indian Law in a Nutshell* 139 (5th ed 2009) ("Subject matter jurisdiction of federal, tribal or state courts usually depends heavily upon two issues: (1) whether the parties involved are Indians or, in some applications, tribal members, and (2) whether the events in issue took place in Indian country and, in some instances, on trust land."); *id.* at 196 ("Outside of Indian country, the state has general criminal jurisdiction over all persons, including Indians," but for "crimes within Indian country," the state's jurisdiction "is generally limited to those crimes that do not concern Indians or Indian interests.").

A myriad of secondary authorities contradicts the state's position that defendant belatedly objects to personal jurisdiction rather than challenges the trial court's subject matter jurisdiction because he asserts that the state must establish that he is a non-Indian. For example, a leading treatise concerning American Indian law explains that "[j]urisdiction over *Indian matters* is a function both of territory and of subject matter. A court's jurisdiction may depend not only on the location of events but also on the race of the parties or the subject matter of the case." Felix S. Cohen, *Handbook of Federal Indian Law* 281 (1982 ed) (emphasis added; footnotes omitted). A later edition of the *Handbook* confirms that, "[a]s a general rule, states lack jurisdiction in Indian country absent a special grant of jurisdiction." *Cohen's Handbook of Federal Indian Law*, § 9.03, 763 (Nell Jessup Newton ed.); *see also Indians; Native Americans*, 41 Am Jur 2d § 142 at 656 (2015) (with certain exceptions, "a state does not have jurisdiction over crimes committed in Indian country or within a reservation by an Indian" (footnotes omitted)); *Indians*, 42 CJS § 182 at 349 (2008) ("A state does not have jurisdiction over crimes committed by an Indian in Indian country.").

Specifically as to a state's court's divestment of jurisdiction, the 1982 edition of the *Handbook* states that, "[w]ithin Indian country state jurisdiction is preempted both by federal protection of tribal self-government and by federal statutes on other subjects relating to Indians, tribes, their property, and federal programs." *Handbook of Federal Indian Law* at 349. *Accord* Wilkinson, *American Indians, Time, and the Law* at 93 (explaining that the exercise of state jurisdictional authority "may be preempted by federal law" and referring to that the barrier as "'subject matter preemption' because it involves the analysis of federal statutes," such as those dealing with "criminal jurisdiction"); *id.* at 94 (stating that one of the general principles of "Indian preemption law" is "a general presumption against state jurisdiction in Indian country, operating with greatest force when only Indians are involved"); Carole F. Goldberg et al., *American Indian Law: Native Nations and the Federal System* 646 (6th ed 2010) (stating that "most state criminal jurisdiction in Indian country is preempted by a reasonably

clear set of federal statutes specifically addressed to jurisdiction over non-Indians as well as Indians").[4]

Because we have resolved the question whether the jurisdictional dispute concerns subject matter jurisdiction based on federal law, and because the state does not contradict defendant's assertion that the compact addresses and restricts a state court's subject matter jurisdiction over offenses committed at the casino, we do not discuss the compact. Accordingly, we reject the state's preservation argument given its erroneous premise, and we proceed to the merits of defendant's current contention that the trial court lacked subject matter jurisdiction because the state failed to establish at trial that defendant was a non-Indian. *See Coats v. ODOT*, 334 Or 587, 594, 54 P3d 610 (2002) ("When a question of subject matter jurisdiction presents itself at any stage of a proceeding, whether on the motion of a party or on the court's own motion, it is the court's duty to address it.").

C. *Subject Matter Jurisdiction in This Case in Light of the Record*

Whether a court has subject matter jurisdiction over a claim is generally a question of law, which we review for legal error. *See, e.g., Merten v. Portland General Electric Co.*, 234 Or App 407, 413, 228 P3d 623, *rev den*, 348 Or 669 (2010). In this case, however, we conclude that we cannot determine whether the trial court had subject matter jurisdiction. Accordingly, we vacate the judgment and remand

---

[4] Fundamentally, this case is about whether the state may exercise its normal, full criminal jurisdiction when a crime has occurred on an Indian reservation that lies within the state's borders. The dissent's understanding that the trial court had authority to hear this case and that defendant's challenge is a matter of personal jurisdiction is based on analogies to bodies of case law that do not apply. That understanding fails to take into account the backdrop of Indian law in this case. *See, e.g., Williams v. Lee*, 358 US 217, 218-20, 79 S Ct 269, 3 L Ed 2d 251 (1959) (addressing a state's power over Indian affairs); *Rice v. Olson*, 324 US 786, 789, 65 S Ct 989, 89 L Ed 1367 (1945) ("The policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history."); John W. Gillingham, *Pathfinder: Tribal, Federal, and State Court Subject Matter Jurisdictional Bounds: Suits Involving Native American Interests*, 18 Am Indian L Rev 73 (1993) (summarizing issues and collecting authorities and research resources regarding jurisdiction in civil and criminal matters involving Native American interests). The dissent's understanding also contradicts some basic principles of that body of law, as we explain above.

the case to the trial court for further consideration of the jurisdictional question.

Defendant first asserts without qualification that the state bore the burden to adduce facts at trial to establish the court's subject matter jurisdiction. For that proposition, defendant relies on ORS 135.730 and two cases: *State v. Smith*, 277 Or 251, 258, 560 P2d 1066 (1977) (holding that, because the "only evidence of record" was that the defendant, an enrolled member of the Warm Springs Indian Tribe, had committed the charged offense on the Warm Springs Indian Reservation, the state "had no jurisdiction to prosecute, try and convict" him), and *State v. Jim*, 81 Or App 189, 191, 725 P2d 372 (1986) (holding that the state failed to present evidence to support the court's jurisdiction over the offense).

The state responds that none of defendant's authorities support his position that a burden of proof as to jurisdictional facts rests on the state. It urges us to hold that the burden of proof rests on defendants, who are in the best position to know their Indian status. We reject both defendant's and the state's polar opposite positions.

We first address defendant's asserted statutory authority, ORS 135.730. That statute provides:

"In pleading in an accusatory instrument *a judgment or other determination of or proceeding* before a court or officer of special jurisdiction, it is not necessary to state the facts conferring jurisdiction; but the judgment, determination or proceeding may be stated to have been duly given or made. *The facts conferring jurisdiction, however, must be established on the trial.*"

(Emphases added.) Defendant focuses only on the emphasized second sentence of the statute to argue that the state must establish subject matter jurisdiction in every trial. The state, however, is correct that, when read as a whole, ORS 135.730 does not articulate such a sweeping requirement and instead is addressed to a special circumstance.

The first sentence of ORS 135.730 concerns a pleading requirement for a prior "judgment or other determination" and establishes that underlying facts giving rise to that judgment or determination need not be pleaded with

specificity. Instead, it is enough for the accusatory instrument to state that the prior judgment was "duly given or made." The second sentence of ORS 135.730 refers back to the facts conferring jurisdiction on the tribunal that issued the prior judgment or determination and requires proof that the earlier judgment or determination was in fact duly made.[5]

The context of ORS 135.730 further supports its plain-text meaning. The statute is among a group of several other statutes, all addressing pleading requirements for accusatory instruments, under the heading "SUFFICIENCY OF ACCUSATORY INSTRUMENTS." *See, e.g.*, ORS 135.711 (requiring the pleading of crime seriousness facts); ORS 135.713 (providing that neither presumptions of law nor judicially noticeable facts need be pleaded); ORS 135.717 (providing that the precise time of a crime need not be alleged); ORS 135.725 (providing that erroneous identification of the victim in the accusatory instrument is not material); ORS 135.733 (identifying pleading requirements for "criminal defamation").

Although we have found no reported case construing ORS 135.730 or its predecessors, the statutory history also supports the view that ORS 135.730 pertains to the pleading of the indictment. The Deady Code contained the earliest predecessor statute and provided:

"In pleading a judgment or other determination of, or proceeding before a court or officer of special jurisdiction, it is not necessary to state the facts conferring jurisdiction; but the judgment, determination or proceeding may be stated to have been duly given or made. The facts conferring jurisdiction, however, must be established on the trial."

General Laws of Oregon, Crim Code, ch VIII, § 83, p 351 (Deady & Lane 1843-1872). The statute has remained in substantially the same form through the years. *See, e.g.*, The

---

[5] The state provides various examples of crimes that would require the pleading of a prior conviction, such as ORS 163.160(3)(a) (2013) (fourth-degree assault is a felony if defendant has conviction for previously assaulting the same victim) and ORS 163.160(3)(b) (2013) (fourth-degree assault is a felony if defendant has three prior domestic-violence assault convictions).

Codes and Statutes of Oregon, title XVIII, ch VIII, § 1317 (Bellinger & Cotton 1901); Oregon Code, title XIII, ch VII, § 13-717 (1930); ORS 132.660 (1953). Historically, those earlier forms of the statute have always been placed in groupings pertaining to charging instruments. For example, the chapter of the Deady Code containing the predecessor statute quoted above was entitled "Of the indictment," and ORS 132.660 (1953) was placed in a group of statutes under the heading, "SUFFICIENCY OF SPECIFIC ALLEGATIONS." Thus, ORS 135.730 does not support defendant's argument concerning the state's burden of proof at trial and instead addresses a pleading requirement in circumstances not at issue in this case.

Addressing defendant's reliance on *Smith* and *Jim*, 81 Or App 189, the state notes that neither case is directly on point, that is, neither addresses the question whether the state had to prove that defendant is "Indian" or "non-Indian" in his criminal trial as part of the state's case. As a result, the state argues, those cases have little bearing on the question of which party has the burden of proving the defendant's Indian status in a criminal case arising in Indian country.

It is true that the two Oregon cases addressing subject matter jurisdiction of Oregon courts—cases concerning offenses charged against enrolled members of the Warm Springs Indian Tribe—are not directly on point. However, both cases support the conclusion that the burden of proving jurisdictional facts in Oregon criminal cases ultimately lies with the state.

In *Smith*, a tribal member was charged with second-degree escape after he was transported from a county jail to a dental clinic on the reservation by a deputy sheriff and escaped. 277 Or at 253. The defendant moved to dismiss the charge and for a directed verdict based on lack of the state's jurisdiction, but the trial court entered a judgment of conviction. *Id.* at 253-54.

The Supreme Court reversed. Quoting a treatise on federal Indian law, the Supreme Court stated its approval of several passages, including the following:

"'It is clear that the original criminal jurisdiction of the Indian tribes has never been transferred to the states. Sporadic attempts of the states to exercise jurisdiction over offenses between Indians, or between Indians and whites, committed on an Indian reservation, have been held invalid usurpation of authority.

"'The principle that a state has no criminal jurisdiction over offenses involving Indians committed on an Indian reservation is too well established to require argument, attested as it is by a line of cases that reaches back to the earliest years of the Republic.'"

*Id.* at 255 (quoting Cohen, *Handbook of Federal Indian Law* 146 (1945 ed)). The court held that "the State of Oregon had no jurisdiction in this case," *Smith*, 277 Or at 257, given the state of the record:

"The only evidence of record is that defendant 'escaped' from custody on the Warm Springs Indian Reservation. There was no evidence that in the course of his escape defendant went upon any portion of Jefferson County except that portion on which the Warm Springs Indian Reservation is located. Under this evidence, we hold that the State of Oregon had no jurisdiction to prosecute, try and convict this defendant."

*Id.* at 258. *Smith*, based as it was on the lack of evidence in the record, suggests that the state has the burden to establish jurisdiction.

Similarly, *Jim* suggests that the state bears the burden of proof. In *Jim*, a tribal member lawfully killed a deer on the reservation and then sold it off the reservation on lands that the tribe had ceded to the federal government in the 1800s pursuant to a treaty. The defendant was charged with and convicted of an Oregon crime, unlawful sale of wildlife. 81 Or App at 191. In the trial court and on appeal, the defendant challenged the state's jurisdiction to prosecute him, arguing that tribal members enjoyed rights to hunt and to sell deer on the ceded land under the treaty. *Id.* We concluded that the state bore the burden to establish that enforcement of the hunting law against the defendant met the requirements of federal law protecting treaty hunting rights. *Id.* at 194. We held that the record was lacking,

"because the trial court agreed with the state's contention that it need not present evidence to support its jurisdiction over defendant." *Id.* at 195. Thus, for lack of proof needed to support "jurisdiction," we reversed. *Id.* at 196-97.

Although *Smith* and *Jim* support placing the burden on the state to prove the jurisdictional fact that a criminal defendant is not Indian, the state raises legitimate concerns about the practical realities of such a burden. In the state's view, a criminal defendant should both raise the fact that he or she is Indian and then prove that Indian status, because it would be unduly burdensome for the state to have to prove a negative and to prove a status that is best known to the defendant. The state relies on two federal cases: *Smith v. United States*, 568 US ___, 133 S Ct 714, 184 L Ed 2d 570 (2013) (holding that the government did not have the burden to disprove a defendant co-conspirator's withdrawal from the conspiracy), and *Eagle v. Yerington Paiute Tribe*, 603 F3d 1161 (9th Cir 2010) (a habeas corpus case in which the petitioner contended that the prosecutor in the tribal court had failed to prove that she was an "Indian" at trial).

*Eagle*, more than *Smith v. United States*, is pertinent to this case. In *Eagle*, the petitioner was charged with criminal child abuse in the tribal court and under the tribal code of the Yerington Paiute Tribe. 603 F3d at 1162. After the close of evidence, she argued in closing that she should be found not guilty because the prosecution had not proved that she was Indian. *Id.* at 1163. The tribal court convicted her without expressly concluding that she was Indian. *Id.* After the Inter-Tribal Court of Appeals affirmed, the petitioner filed a petition for writ of habeas corpus in federal court. *Id.*

The district court denied relief, concluding that the petitioner's status was not an element of the charged crime and that her closing argument came too late to raise the issue of her Indian status, thereby excusing the tribe from proving at trial that she was Indian. *Id.* On appeal to the Ninth Circuit Court of Appeals, the petitioner first contended that, by virtue of the Indian Civil Rights Act of 1968, 25 USC sections 1301-1303, her status as an Indian

became an element of the charged crime. 603 F3d at 1164. The Ninth Circuit rejected that argument. *Id.* at 1164-65. The petitioner also argued that her due process rights were violated because the tribe had not proved her Indian status. The Ninth Circuit rejected that argument as well, because the petitioner had not timely raised the issue. *Id.* at 1165. The court's reasoning was twofold: First, the petitioner could have disputed her Indian status, a jurisdictional element in the tribal court, earlier in the case but instead waited until closing argument. Second, even if her argument at that point was sufficient to raise the jurisdictional issue, a tribal code provision requiring the tribe to prove the Indian status of a criminal defendant at trial "implicitly contemplates" that a defendant's challenge to jurisdiction would "come at a point in the case when the prosecution can introduce the required proof." *Id.* Thus, because the petitioner had "waited until after the close of evidence at trial—a point when the time to prove her Indian status had passed—before she raised the issue," her challenge came too late. *Id.*

The requirement placed on the petitioner in *Eagle* to timely create an issue of fact concerning her Indian status is in accord with Ninth Circuit cases brought under the Indian General Crimes Act, 18 USC section 1152. For example, in *United States v. Hester*, 719 F2d 1041 (9th Cir 1983), the defendant, who was convicted of sexually related crimes involving Indian children on the Navajo Reservation, challenged the sufficiency of the indictment, arguing that the government was required to allege and to prove his non-Indian status. *Id.* at 1042. As noted, the Indian General Crimes Act provides that federal jurisdiction does not "extend to offenses committed by one Indian against the person or property of another Indian." 18 USC § 1152. The Ninth Circuit characterized that provision as an "exception" to federal jurisdiction under section 1152 and held that such an exception need not be pleaded in the charging instrument:

> "the Government need not allege the non-Indian status of the defendant in an indictment under section 1152, nor does it have the burden of going forward on that issue. Once the defendant properly raises the issue of his Indian status, then the ultimate burden of proof remains, of course, upon the Government."

719 F2d at 1043; *cf. United States v. Heath*, 509 F2d 16, 20 (9th Cir 1974) (stating that an allegation in the indictment that the defendant was an enrolled member of the Warm Springs Indian Tribe "was sufficient for purposes of alleging Federal jurisdiction pursuant to 18 U.S.C. § 1152").

The court in *Hester* reasoned that the rule made sense given that it is "far more manageable for the defendant to shoulder the burden of producing evidence that he is a member of a federally recognized tribe than it is for the Government to produce evidence that he is not a member of any one of the hundreds of such tribes." 719 F2d at 1043. As the Ninth Circuit explained in *United States v. Bruce*, 394 F3d 1215, 1222-23 (9th Cir 2005), after *Hester*, the Indian status of a defendant in a case brought under the Indian General Crimes Act in the Ninth Circuit "is in the nature of an affirmative defense."[6]

We are persuaded that the Ninth Circuit rule is an appropriate one to adopt in Oregon. First, given the otherwise broad jurisdiction over criminal matters that circuit courts have under Article VII (Original), section 9, and Article VII (Amended), section 2, of the Oregon Constitution, the application of federal law limiting state jurisdiction over crimes committed in Indian country is an exception to circuit court jurisdiction.[7] Second, the state would otherwise have to prove a negative: that the criminal defendant is not an Indian. Accordingly, we hold that a criminal defendant who seeks to challenge subject matter jurisdiction must assert his or her Indian status and provide the trial court

---

[6] However, the Ninth Circuit's holding in *Hester* that the Indian status of the defendant is an exception to federal jurisdiction and need not be pleaded or proved appears to be a minority view. In *United States v. Prentiss*, 206 F3d 960, 974 (10th Cir 2000), the court rejected the rule in *Hester* and adopted the Seventh Circuit's approach in *United States v. Torres*, 733 F2d 449, 454 (7th Cir 1984). Under that approach, the Indian status of both "the defendant and the victim are essential elements under 18 U.S.C. § 1152 that must be alleged in the indictment and established by the prosecution at trial beyond a reasonable doubt." *Prentiss*, 206 F3d at 974.

[7] Article VII (Original), section 9, provides, in part, "All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts[.]" Article VII (Amended), section 2, provides, in part, "The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law."

with evidence of that status in time to permit the state to rebut that evidence at trial and to prove the defendant's non-Indian status.

In this case, given the arguments made to the trial court, the issue of subject matter jurisdiction was not fully litigated. Defendant neither asserted that the trial court lacked subject matter jurisdiction because of his Indian status nor submitted evidence of that status to the trial court. Therefore, we remand for the trial court to permit defendant to attempt to meet his burden of production concerning his status as an Indian; and, if he does so, the court must conduct proceedings to determine defendant's status as an Indian, during which the state will bear the burden of proof. Depending on the nature of the disputed evidence, the court may decide to conduct an evidentiary hearing. If, on remand, the trial court concludes that it has jurisdiction, then it should reinstate the judgment.

Vacated and remanded.

**ARMSTRONG, P. J.,** dissenting.

The majority concludes that defendant's challenge to the circuit court's authority to enforce state criminal law against him for his conduct at the Wildhorse Casino on the Umatilla Indian Reservation presents a challenge to the court's subject matter jurisdiction and, hence, is a challenge that he can raise for the first time on appeal. I respectfully disagree. Federal law limits Oregon's authority to apply its criminal law against people who commit crimes at the Wildhorse Casino, but that limit affects who can be subjected to state criminal law in state court, which, as I will explain, is a matter of personal rather than subject matter jurisdiction. Because defendant's challenge presents a challenge to the court's authority over him, rather than to the court's subject matter jurisdiction, it is a challenge that cannot be raised for the first time on appeal. The majority errs in concluding otherwise and, as a result, in vacating defendant's convictions and remanding the case to the trial court to resolve defendant's belated jurisdictional challenge.

As the majority correctly notes, federal law limits the application of state criminal law against people who

commit crimes in Indian country. *See, e.g., State v. Jim,* 178 Or App 553, 556-57, 37 P3d 241, *rev dismissed,* 335 Or 91 (2002). The question that we must decide is whether the effect of that limit is to alter the subject matter jurisdiction of state courts in the affected states or, instead, to identify people against whom states cannot apply their criminal law.

I believe that the answer to that question begins with ORS 131.215, which identifies who is subject to prosecution in state court for state criminal offenses. It provides that

"a person is subject to prosecution under the laws of this state for an offense that the person commits by the conduct of the person * * * if:

"(1) Either the conduct that is an element of the offense or the result that is an element occurs within this state[.]"

The Supreme Court identified ORS 131.215 in *State v. Terry,* 333 Or 163, 186 n 14, 37 P3d 157 (2001), *cert den,* 536 US 910 (2002), as among the Oregon statutes that address "principles of personal jurisdiction in criminal matters."

The court's identification of ORS 131.215 as a personal-jurisdiction statute fits the basic distinction that Oregon courts have consistently drawn between personal and subject matter jurisdiction. In Oregon, the circuit court is the court that has subject matter jurisdiction over the prosecution of state criminal offenses. *See Terry,* 333 Or at 186; *see also Greeninger v. Cromwell,* 127 Or App 435, 438, 873 P2d 377 (1994) (discussing principles of subject matter jurisdiction). Whether a particular person is subject to prosecution in circuit court for a criminal offense, that is, whether the person is someone whose conduct brings the person within the reach of ORS 131.215, presents a question of personal rather than subject matter jurisdiction.

In that light, the limitation imposed by federal law on Oregon's authority to prosecute Indians who commit crimes in Indian country can be seen to affect personal rather than subject matter jurisdiction. The effect of that law is to limit the reach of ORS 131.215 by preempting its application to Indians who commit crimes in Indian country. That limitation does not alter the subject matter jurisdiction

of the circuit court, which continues to be the court that has jurisdiction over the prosecution of state criminal offenses.

My understanding of the effect of federal law on state jurisdiction over criminal offenses committed by Indians in Indian country is consistent with the Oregon cases that have grappled with that issue. *State v. Smith*, 277 Or 251, 560 P2d 1066 (1977), for example, involved the prosecution of an enrolled member of the Warm Springs Indian Tribe for escape from custody while on the Warm Springs Indian Reservation. The defendant had been in state custody in Jefferson County and had been transported by jail staff onto the reservation to obtain dental services, where he had escaped. In response to the state's suggestion that the crime of escape might have been committed partially on the reservation and partially off the reservation, the court observed:

> "We do not necessarily disagree with such contentions or with the underlying assumption that the crime of escape may be a continuing crime, depending upon the facts. According to the record in this case, however, the conduct of this defendant in escaping from the custody of the officer occurred solely and entirely upon the Warm Springs Indian Reservation. * * *

> "* * * There was no evidence that in the course of his escape defendant went upon any portion of Jefferson County except that portion on which the Warm Springs Indian Reservation is located. Under this evidence, we hold that the State of Oregon had no jurisdiction to prosecute, try and convict this defendant."

*Id.* at 257-58. In short, the factual issue in the case concerned the location of the crime, which governed whether Oregon could apply its criminal law to the defendant.

The determination in *Smith* that the state lacked jurisdiction "to prosecute, try and convict [the] defendant" does not mean that the circuit court lacked subject matter jurisdiction over the case. It means only that the circuit court had erred by failing to dismiss the indictment or grant a judgment of acquittal because the defendant was not someone against whom *the state* could impose criminal liability for his conduct on the Warm Springs Reservation.

The circuit court was the state court that had subject matter jurisdiction to impose that liability, if the state otherwise had the authority to do that, because it was the state court that had jurisdiction to adjudicate cases involving the application of state criminal law to people accused of crime. In other words, the lack of state jurisdiction to impose criminal liability against the defendant in *Smith* does not equate with a lack of subject matter jurisdiction of the circuit court to adjudicate a case that seeks to impose that liability.

Defendant cites *State v. Jim*, 81 Or App 189, 725 P2d 372 (1986) (*Bruce Jim*), for the proposition that the state must prove facts establishing jurisdiction. That unremarkable proposition, however, does not answer the question presented here. Under ORS 161.055(1), when a defense other than an affirmative defense is "raised at a trial," the state has the burden of disproving it. However, under subsection (3) of that statute:

> "The state is not required to negate a defense as defined in subsection (1) of this section unless it is raised by the defendant. 'Raised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."

ORS 161.055(3). Several cases concerning the intersection between state criminal law and tribal jurisdiction support the notion that certain matters pertaining to state jurisdiction are, in fact, treated as defenses that must be raised by a defendant.

In *State v. Smith*, 51 Or App 223, 625 P2d 1321, *rev den*, 291 Or 118 (1981), several defendants, members of the Warm Springs tribes, were charged in state court with unlawful possession of fish that had been unlawfully caught in another state. They moved to dismiss the charges, arguing that the state "lacked subject matter and personal jurisdiction in the case." *Id.* at 227. The state's theory of the case was that the fish had been illegally gill-netted. The defendants argued in support of their motion to dismiss that they had lawfully obtained the fish from Yakama Indians for ceremonial purposes, as permitted under a series of treaties between the federal government and various tribes of the

Pacific Northwest. *Id.* at 226-28. In response to that argument, we stated:

"Defendants contend that according to federal case law, treaties and tribal resolutions, jurisdiction could only lie in the U. S. District or tribal courts. *This position not only misinterprets federal Indian fishing law, it also confuses matters of jurisdiction with matters of defense.*"

*Id.* at 227 (emphasis added). We went on to describe at length the various tribal and federal laws governing the fishing at issue in the case, concluded that the defendants' possession of the fish was not, in fact, governed by the treaties on which the defendants relied, and determined that Oregon had personal jurisdiction over the defendants because they had unlawfully transported the fish within the state of Oregon. *Id.* at 230; *see also State v. Hendon,* 61 Or App 123, 655 P2d 630 (1982), *rev den,* 294 Or 682 (1983) (concluding that trial court had erred in granting defendants' motion to dismiss for lack of jurisdiction over the crime of unlawfully transporting fish based on assertions similar to those advanced in *Smith,* noting that "the trial court confused matters of jurisdiction with matters of defense").

Those cases, though not spelling it out explicitly, all implicitly indicate that, when a factual issue *is raised by the defendant* about whether a tribal or a state (or a federal) court has jurisdiction over the defendant, we treat it as a matter of defense, and the state has the burden of disproving such a defense. *Accord* ORS 161.055. Those cases, however, simply do not support the proposition that defendant posits here—*viz.,* that the state must disprove potential defenses even though they were *not* raised by defendant.

*Bruce Jim* is not to the contrary. In *Bruce Jim,* the defendant was convicted of unlawful sale of wildlife. He argued that, "because he is a member of a tribe that has reserved hunting rights (including the right to sell game) on off-reservation ceded lands, the state [had] no authority to enforce its wildlife laws against him." 81 Or App at 191. Following precedent from the United States Supreme Court, we held that "there are three requirements that must be met before a state has the authority to impose its game regulations on treaty hunters in ceded territory." *Id.* at 193. The

state was required to show that the regulation is "reasonable and necessary," that the application of the regulation to the defendant is "in the interest of conservation," and that the regulation does "not discriminate against treaty hunters." *Id.* at 193-94. We noted that there had been no evidence presented that the regulation had a conservation purpose, "because the trial court [had] agreed with the state's contention that [the state] need not present evidence to support [the state's] jurisdiction over defendant." *Id.* at 195. Accordingly, we reversed the defendant's conviction. That case, like the others discussed above, can be said to stand for the unremarkable proposition that, when a defendant *raises* an issue concerning the state's jurisdiction over the defendant (and specifically, an issue based on his or her status as an Indian), it is treated as a matter of defense that the state must disprove. Indeed, the court explicitly described the issue there as "jurisdiction *over defendant*," which is not the same as subject matter jurisdiction. *Id.* (emphasis added); *accord State v. Jim*, 81 Or App 177, 725 P2d 365 (1986), *rev den*, 302 Or 571 (1987) (*Warner Jim*) (discussing similar issue concerning the unlawful sale of fish by a tribal member and faulting the state's proof of a conservation purpose, but nonetheless affirming the conviction after taking judicial notice of a case establishing conservation purpose).

My understanding of the interplay between federal Indian law and state jurisdiction over crimes committed in Indian country, that is, the effect of federal law on state jurisdiction, is consistent with the principles that apply to state long-arm jurisdiction. The Fourteenth Amendment to the United States Constitution limits the power of a state to subject a nonresident defendant to civil liability in its courts. As the Supreme Court has explained,

"a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State. * * * The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable functions. It protects the defendant against the burdens of litigating in a distant and inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond

the limits imposed on them by their status as coequal sovereigns in a federal system."

*World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 291-92, 100 S Ct 559, 62 L Ed 2d 490 (1980).

The limit imposed on state power by the Fourteenth Amendment is understood to be a limit on the power of a state court to assert jurisdiction over a defendant, that is, as a limit on personal rather than subject matter jurisdiction. In that respect, ORCP 4, which specifies the circumstances in which an Oregon court may assert jurisdiction over a defendant in a civil case, is the counterpart of ORS 131.215, which specifies the circumstances in which an Oregon court may assert jurisdiction over a defendant in a criminal case. Both provisions are addressed to personal jurisdiction, as is the limit imposed by federal law on the authority of a state court to assert jurisdiction over an Indian for crimes committed in Indian country.

In sum, the issue that defendant attempts to raise here concerns whether the state can apply its criminal law against him for his conduct at the Wildhorse Casino, which depends on whether he is an Indian—who under federal law is not subject to state criminal liability for that conduct—or he is not an Indian—who is subject to that liability. That presents a question of personal rather than subject matter jurisdiction that defendant cannot raise for the first time on appeal.[1]

---

[1] The effect of federal law in that context is the same as the effect of diplomatic immunity on a state's authority to prosecute people for crimes committed in the state. Diplomatic immunity in the United States is based on the Diplomatic Relations Act, 22 USC §§ 254a-254d, which makes the Vienna Convention applicable to the United States. The Vienna Convention, in turn, provides that a "diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State." Vienna Convention on Diplomatic Relations, Apr 18, 1961, Art 31.1, 23 UST 3227. "Thus, under the * * * statute, if, at the time he was arrested, [the defendant] was entitled to diplomatic immunity under Article 37.1 of the Vienna Convention, the criminal proceedings against him must be dismissed." *United States v. Al-Hamdi*, 356 F3d 564, 569 (4th Cir 2004); *see also Diallo v. State*, 413 Md 678, 700, 994 A2d 820 (2010) ("[I]f Petitioner was entitled to diplomatic immunity under the UN Convention and the Vienna Convention at the time the offense occurred or when he was arrested, the [Maryland] trial court should have dismissed the charges against him."). That limitation on state prosecutorial authority is a limit on a state court's jurisdiction over a person whose status entitles the person to diplomatic immunity; it does not alter the court's subject matter jurisdiction.

The majority relies for its contrary conclusion on a variety of authorities that do not directly address the question whether the federal limit on state authority to impose criminal liability against people for crimes committed in Indian country alters the subject matter jurisdiction of state courts. No Oregon case answers that question, and, as I have explained, all of the Oregon cases can be understood to be consistent with my understanding of federal law.[2] None of the secondary sources cited by the majority answers the question, either. Finally, the federal cases cited by the majority provide no guidance because federal courts, by their nature, are courts of limited jurisdiction in which litigants must plead and prove that the claims that they seek to litigate come within the subject matter jurisdiction of the federal courts. *See, e.g., Kokkonen v. Guardian Life Ins. Co.,* 511 US 375, 377, 114 S Ct 1673, 128 L Ed 2d 391 (1994).

Because the challenge that defendant raises is not a challenge to the trial court's subject matter jurisdiction, the challenge is not one that defendant can raise for the first time on appeal. I respectfully dissent from the majority's contrary conclusion.

---

[2] The only Oregon case cited by the majority that I have not discussed, *State v. Columbia George,* 39 Or 127, 65 P 604 (1901), adds nothing to the analysis. The defendant in *Columbia George* was an Indian who was convicted under Oregon law for murder for killing another Indian on the Umatilla Indian Reservation. The court reversed the conviction because federal law barred the state from prosecuting Indians for crimes committed in Indian country and, hence, the state court lacked jurisdiction over the offense. *Columbia George* is equivalent in its import to *State v. Smith,* which, as I have explained, see 277 Or App at 773-74, is consistent with my understanding of the effect of federal law on the prosecution of people in state court for crimes committed in Indian country.